IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PENCO PRODUCTS, INC.,** | : | **CIVIL ACTION** |
| Plaintiff | : | **NO. 13-959** |
| v. | : | |
| | : | |
| **WEC MANUFACTURING, LLC,** | : | |
| Defendant | : | |
| | : | |

## MEMORANDUM OPINION AND ORDER

**Rufe, J.**                                                                                  **September 24, 2013**

Plaintiff Penco Products, Inc. ("Penco"), a manufacturer of metal lockers and related products, entered into exclusive distribution contracts with Wholesale Equipment Company ("Wholesale") in 2007 and 2009. Defendant WEC Manufacturing, LLC ("WEC") is allegedly the successor-in-interest to Wholesale, which went through bankruptcy and is now apparently defunct. Penco has sued WEC to recover money allegedly owed by Wholesale.

In its complaint, Penco asserted that the Court has both general and specific personal jurisdiction over Defendant. Specifically, it asserts "Defendant's alter ego and predecessor, [Wholesale], contracted with Plaintiff to transact business and, upon information and belief, Defendant regularly transacts other business within the Commonwealth of Pennsylvania."[1] Now before the Court is WEC's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), asserting lack of personal jurisdiction. For the reasons below, the Court will deny the motion without prejudice to renewal following jurisdictional discovery.

---

[1] Compl. at 2.

## I. FACTUAL BACKGROUND

### A. *The Parties' Business Relationship*[2]

Penco is a Delaware corporation with its principal place of business in Pennsylvania. Defendant WEC is a limited liability company organized under the laws of Tennessee, and its single member, Keith Durham, is a resident of Tennessee.[3] As a limited liability company's citizenship is determined by the citizenship of its members,[4] WEC is a Tennessee citizen. WEC is allegedly the successor-in-interest to Wholesale.

Penco's business relationship with Wholesale arose from a networking opportunity at a trade show in Chicago, Illinois in 2007.[5] After meeting there, the parties negotiated and agreed to an exclusive distribution contract, which provided that Penco would sell its products to Wholesale for commercial sale within a defined geographic area.[6] Wholesale negotiated this contract outside of Pennsylvania.[7] The contract was signed by Wholesale in Tennessee.[8]

Over the next two years, Penco fulfilled Wholesale's purchase orders, delivering the ordered products to Wholesale or otherwise making them available to Wholesale, which resold

---

[2] Except where noted, the factual allegations outlined below come from Penco's Complaint. Where the Court cites Barry K. Durham's Declaration, which was submitted by Defendant, the assertions for which it is cited are unopposed by Plaintiff.

[3] The citizenship of Keith Dunham is taken from the Notice of Removal. Penco's complaint only notes that WEC is a Tennessee limited liability company with its principal place of business in Tennessee.

[4] *Zambelli v. Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010).

[5] Dunham Decl. ¶ 9-12 (Doc. No. 4, Ex. A).

[6] Wholesale was granted exclusive distribution rights for Penco products in Mississippi, Louisiana, Tennessee, Alabama, Missouri, Kansas, Arkansas, Kentucky, and parts of Illinois and Florida. Dunham Decl. ¶ 20.

[7] Dunham Decl. ¶ 12-18.

[8] Dunham Decl. ¶19.

them in the designated region. During the time period in which Penco and Wholesale were doing business, Wholesale frequently contacted Penco employees in Pennsylvania regarding payments, orders, and customer service, via thousands of emails and telephone calls.[9] Wholesale executives traveled to Penco's offices in Pennsylvania once, to discuss sales and marketing.[10] Penco products ordered by Wholesale were generally shipped from Penco's North Carolina and Utah warehouses, but sometimes were shipped from Pennsylvania.[11]

In August 2009, Penco and Wholesale renewed the distribution agreement. Sometime after the contract was renewed, Wholesale fell behind on payments to Penco. By March 2010, Wholesale owed Penco $1.4 million in accounts payable. The parties negotiated a plan for repayment of this accounts payable balance, reaching an agreement ("settlement agreement") in March 2010. The settlement agreement was first discussed at an in-person meeting in Tennessee, and was later negotiated during telephone conversations between Wholesale personnel in Tennessee and James Benenson, CEO of Penco's parent company, in Ohio.[12] The agreed-upon terms were memorialized in a letter settlement agreement, which was executed by Wholesale in Tennessee and mailed to James Benenson III in New York.[13] Wholesale then issued a promissory note.[14]

---

[9] Woodward Decl. ¶ 7-12 (Doc. No. 9, Ex. A).

[10] Dunham Decl. ¶ 29.

[11] Dunham Decl. ¶ 22.

[12] Dunham Decl. ¶ 47, 52, and 60.

[13] Dunham Decl. ¶ 64, 65.

[14] Dunham Decl. ¶ 65.

As one part of the settlement agreement, the parties agreed to a 42-month payment plan for the payment of $290,000 of the total amount owed. On April 22, 2010, Wholesale executed and delivered a promissory note (the "Note") to Penco, promising to repay $290,000 for value received. The parties agreed that Wholesale would make monthly payments of $6,904.76 against the principal from May 2010 though October 2013, at which time the unpaid principal balance and any accrued interest would be due.[15] However, upon occurrence of certain events set forth in the Note, including failure to make a monthly payment within three days of the date due, the entire unpaid balance would become immediately due at Penco's option, that balance would be subject to interest at a 5% per annum rate if not paid, and Wholesale would be responsible for Penco's attorneys' fees, court costs, and expenses in connection with its collection of the debt. The parties also agreed that Wholesale would return $250,000 worth of Penco products, and that Penco would forgive $160,000 in debt so long as Wholesale satisfied the other terms of the agreement.

It is alleged that Wholesale failed to make its required monthly payment on October 1, 2010, and Penco notified Wholesale that it was in default on October 12, 2010. Some subsequent payments were also missed, and additional default notices were sent in January 2011, February 2011, and February 2012. On April 10, 2012, Penco notified Wholesale that, given the history of default, it was seeking immediate payment of the entire unpaid balance of the Note and interest at 5% per annum from October 12, 2010. In that letter, Penco indicated that Wholesale owed $156,000 in principal, $14,262,50 in accrued interest, and that interest would accrue at the rate of $21.37 per day until the balance was paid. In addition, that letter indicated that Penco had

---

[15] If payments were made on time, the promissory note indicated that the interest would be 0% per annum.

agreed to forgive $160,000 of Wholesale's debt to it, as part of their settlement agreement, but as that forgiveness was contingent upon compliance with the terms of the Note, and Wholesale had defaulted on the Note, the $160,000 in forgiven debt was also due.

WEC was formed by Wholesale's vice president, Keith Dunham, in May 2011. Both WEC and Wholesale listed Dunham as officers on their 2011 Annual Reports to the Tennessee Secretary of State. Penco alleges that WEC "is operating the same business as [Wholesale] including but limited to the same ownership, management, personnel, physical location and general business operation as [Wholesale],"[16] and indicates that Wholesale has continued its business as WEC. On September 12, 2012, Wholesale filed a liquidated Chapter 7 bankruptcy case in the Western District of Tennessee, but alleged successor-in-interest WEC has not sought bankruptcy protection. Penco sues only WEC, and alleges that all of Wholesale's contacts with Pennsylvania can be attributed to WEC, as WEC was formed to avoid Wholesales's settlement obligations and it is the successor-in-interest to Wholesale's business operations.

### B.    *Wholesale's and WEC's General Contacts with Pennsylvania*[17]

Wholesale and WEC sold no Penco products in Pennsylvania. However, Wholesale did occasionally sell its own products in Pennsylvania, and WEC continues to do so. Wholesale maintained, and WEC now maintains, a non-interactive website which indicated, among other things, that its products were available in Pennsylvania through an independent sales contractor for the mid-Atlantic region. Defendant's website is consistent with its allegation that the

---

[16] Compl. at 7.

[17] The facts set forth below come from the parties' briefs and their attachments, and not the Complaint, but are undisputed.

5

independent contractors solicit locker orders within designated regions, and that Atlantic Sales and Marketing Association, Inc. ("Atlantic")[18] covers the Mid-Atlantic region, including but not limited to eastern Pennsylvania.[19] Atlantic also markets the products of other, non-competing companies.[20] The website provides contact information for that independent contractor, as well as for the independent sales contractors covering other regions. Wholesale's sales (and later WEC's sales) in Pennsylvania represented a very small percentage of the overall business (e.g. approximately 1%-2% of annual sales in 2010 through 2012).

II.    **STANDARD OF REVIEW**

On a motion to dismiss, a court is required to accept a plaintiff's allegations as true and construe disputed facts in favor of the plaintiff.[21] Once a defendant raises a jurisdictional defense, the plaintiff has the burden of proving that jurisdiction is proper by affidavits or other competent evidence.[22] Plaintiff need only establish a prima facie case of personal jurisdiction,[23] and meets this burden by stating the bases for personal jurisdiction with reasonable particularity.[24] Federal courts sitting in diversity may exercise personal jurisdiction over nonresident defendants to the extent provided by the law of the state in which the federal court

---

[18] Defendant alleges that Atlantic is a Maryland-based company, and Penco does not contest this allegation.

[19] Doc. No. 9, Ex. B.

[20] Screen shots from Atlantic's website indicate that Atlantic markets multiple manufacturers' products in the mid-Atlantic region. The website includes links to more than a dozen manufacturers, including WEC, with which Atlantic is associated. Doc. No. 9, Ex. C.

[21] *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009).

[22] *Id.*

[23] *Id.*

[24] *See Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992).

sits.²⁵ Pennsylvania's Long-Arm Statute allows personal jurisdiction over nonresident defendants to the constitutional limits of the due process clause of the Fourteenth Amendment.²⁶ Under this standard, nonresident defendants are required to have minimum contacts with Pennsylvania so as not to offend traditional notions of fair play and substantial justice.²⁷ There are two types of personal jurisdiction: general and specific.²⁸

## III. DISCUSSION

### A. *General Personal Jurisdiction*²⁹

WEC is not incorporated in Pennsylvania, and is not licensed or registered to do business here. As WEC has not consented to the Court's jurisdiction, to establish general personal jurisdiction based on contacts with the state that are unrelated to the cause of action, due process requires Penco to demonstrate that the company (or its predecessor-in-interest) had continuous and systematic contacts with the forum.³⁰ The Court must examine factors such as the nature and quality of business contacts within the forum, direct sales in the forum, the maintenance of a

---

²⁵ Fed. R. Civ. P. 4(e).

²⁶ 42 Pa. Stat. Ann. § 5322(b); *Mellon Bank*, 960 F.2d at 1221.

²⁷ *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

²⁸ *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 & n.9 (1984).

²⁹ Penco argues that the Court has general personal jurisdiction over WEC based upon its own contacts with the forum, and also based on Wholesale's contacts, as it alleges WEC is a successor-in-interest to Wholesale. While the Court notes that the jurisdictional contacts of a predecessor company may be imputed to its successor (*See In re Nazi Era Cases Against German Defendants Litig.*, 153 F. App'x 819, 825 (3d Cir. 2005)), examining non-defendant Wholesale's contacts rather than WEC's would not change the result here, because Penco alleges that WEC and Wholesale had the same types of contacts with the forum (i.e. an informational website and annual sales in Pennsylvania, brokered by independent contractors, amounting to 1-2% of total annual sales). Therefore, the Court analyzes only defendant WEC's contacts with the forum.

³⁰ *Id.*; *Dollar Sav. Bank v. First Sec. Bank of Utah, N.A.*, 746 F.2d 208, 212 (3d Cir. 1984); 42 Pa. C.S. § 5301(a)(2).

7

sales force in Pennsylvania, and marketing efforts targeting citizens of Pennsylvania.[31]

WEC makes no direct sales in the forum and there is no allegation or evidence that WEC employs any salespeople in Pennsylvania. Independent contractor Atlantic takes product orders for WEC in eastern Pennsylvania, but also in other mid-Atlantic states. And WEC is not Atlantic's only client. According to Defendant, the Atlantic and the independent contractors are permitted, by the terms of their contracts with WEC, to sell non-competing products for other entities as well. These factors mitigate against imputing Atlantic's contacts to WEC.[32]

Penco points out that WEC maintains a product website accessible to citizens of Pennsylvania, as well as other internet users. Internet activity within a forum *may* subject an entity to general personal jurisdiction in that forum. The district courts within the Third Circuit generally apply a sliding scale approach to determine whether personal jurisdiction exists over a company with an internet presence in a given forum.[33] Where the defendant enters into contracts with residents of the forum that involve the knowing and repeated transmission of computer files over the internet, a court within that forum will have general jurisdiction.[34] However, where a defendant simply posts information or advertisements on a website accessible to users in a forum,

---

[31] *Automated Med. Prods. Corp. v. Int'l Hosp. Supply Corp.*, No. 97-2328, 1998 WL 54351, at *3 (E.D. Pa. Jan. 29, 1998).

[32] *See Simplicity, Inc. v. MTS Prods., Inc.*, 05-3008, 2006 WL 924993, at *6 (E.D. Pa. Apr. 6, 2006) (noting use of sales agents assigned to multiple states, and not just Pennsylvania, cannot support a finding of general jurisdiction); *Henning v. Suarez Corp. Indus.*, 713 F. Supp. 2d 459, 468 (E.D. Pa. 2010) (declining to find general jurisdiction where independent contractors selling non-resident defendant's product in Pennsylvania were also engaged in sales transactions to which defendant was not a party).

[33] *Live Face on Web, LLC v. Highview Travel, LLC*, No. 11-2497, 2012 WL 246016, at *4 (E.D. Pa. Jan. 25, 2012).

[34] *Blackburn v. Walker Oriental Rug Galleries, Inc.*, 999 F. Supp. 636, 638 (E.D. Pa. 1998).

the courts of that forum generally will not assume jurisdiction.[35]

Here, the WEC website is alleged to contain information about the company's products, and telephone numbers to call for more information or to purchase the products. The website indicates that the company's products are available in eastern Pennsylvania (and other mid-Atlantic states) through Atlantic, and provides contact information for that independent dealer. Penco does not allege that customers, in Pennsylvania or elsewhere, are able to place product orders directly through the website. Rather, the website in question serves as an advertisement for the company's services, and merely provides contact information for consumers seeking additional service or information. It is not alleged that the website targets or is selectively directed at Pennsylvania,[36] nor is it alleged that the website has generated any forum business.[37] Accordingly, the Court cannot find that WEC, through its website, had systematic and continuous contacts with Pennsylvania. Other than the nationally-available website, Plaintiff points to no advertising or marketing efforts targeting citizens of Pennsylvania.

Penco also argues that WEC has generated significant revenues from sales of storage lockers to consumers in Pennsylvania. For example, Penco points out that Defendant had over $30,000 in product sales in Pennsylvania in 2012, and predecessor Wholesale "likely" had even

---

[35] *Id.* at 638-39.

[36] *Manning v. Flannery,* 2010 U.S. Dist. LEXIS 1091, at *18-19 (E.D. Pa. 2010) (courts only exercise general jurisdiction when the defendant engages in extensive *local* advertising specifically calculated to attract in-state residents); *Molnlycke Health Care AB v. Dumex Medical Surgical Products, Ltd.*, 64 F. Supp. 2d 448, 451 (E.D. Pa. 1999) (holding that operating website which allows citizens of all states to order products and to request additional information does not subject a corporation to the general jurisdiction of every state); *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997).

[37] *See Gehling v. St. George's School of Medicine, Ltd.*, 773 F.2d 539, 542 (3d Cir. 1985)*; Orazi v. Hilton Hotels Corp.*, No. 09-5959, 2010 WL 4751728, *6 (E.D. Pa. Nov. 22, 2010).

9

higher sales revenue in Pennsylvania in the years preceding its bankruptcy. However, Defendant points out that they made only five sales to buyers in Pennsylvania in 2012, accounting for only 2% of WEC's 2012 sales,[38] and Penco has not demonstrated, and the WEC website does not indicate, that WEC conducts business equally in all or nearly all 50 states, which could render the 2% of gross receipts in Pennsylvania substantial.[39] Moreover, Penco has not demonstrated that WEC regularly solicited sales in Pennsylvania, that WEC had daily or continuous contact with Pennsylvania, or that sales to Pennsylvania consumers were extensive, systematic, or central to WEC's business.

Based on the allegations and evidence before it, the Court notes that WEC did not make substantial sales in the forum and did not regularly solicit business through activities it targeted at the forum, and therefore the Court cannot find that WEC had sufficient business contacts with Pennsylvania to subject them to the Court's general jurisdiction.

### B. *Specific Personal Jurisdiction*

Specific jurisdiction exists when the claim arises from or relates to contacts purposefully directed at the forum state.[40] To establish specific personal jurisdiction, a plaintiff must show that: (1) the defendant purposely directed activities at the forum; (2) the litigation arose out of or related to one or more of these activities; and (3) jurisdiction of the court comports with fair play

---

[38] *See Wilson v. The Canada Life Assurance Co.*, No. 08-1258, 2009 WL 532830, at *5 (M.D. Pa. Mar. 3, 2009) (declining to find general jurisdiction over Canadian company that engaged in 70 transactions in Pennsylvania intermittently over two years); *Simplicity, Inc.*, 2006 WL 924993, at *4 (defendant's sales in Pennsylvania, totaling less than 5% of the company's total sales, substantially below the continuous and systematic contacts requirement).

[39] *See Modern Mailers, Inc. v. Johnson & Quin, Inc.*, 844 F. Supp. 1048, 1055 (E.D. Pa. 1994).

[40] *Marten*, 499 F.3d at 296.

and substantial justice.[41] The Court may preside over a case "if it is satisfied that the relationship among the defendant, the cause of action, and the forum falls within the 'minimum contacts' framework first announced in *International Shoe Co. v. Washington*, and later refined by the abundant progeny of that landmark case."[42] "[W]ith respect to interstate contractual obligations, we have emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities."[43] A state has an interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors who purposefully derive benefit by voluntarily contracting with an in-state actor.[44]

Penco recognizes that the contracts at the center of this dispute were entered into and allegedly breached by Wholesale, and all relevant contacts with the forum were by Wholesale and not WEC. However, Penco argues that WEC is subject to the specific personal jurisdiction of the Court as Wholesale's successor-in-interest. "[U]nder Pennsylvania law, the acts of a predecessor corporation may be attributed to its successor for purposes of determining whether jurisdiction over the successor is proper."[45] Penco's successor-in-interest claim relies upon allegations of Wholesale's and WEC's shared leadership, business niche, manufacturing facilities, and website. Because the precise nature of the relationship between Wholesale and

---

[41] *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102-03 (3d Cir. 2009).

[42] *Mellon Bank*, 960 F. 2d at 1221 (citation omitted).

[43] *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473 (1985) (citation omitted).

[44] *Id.*

[45] *Huth v. Hillsboro Insur. Mgmt., Inc.,* 72 F. Supp. 2d 506, 510 (E.D. Pa. 1999) (citing *Simmers v. Amer. Cyanamid Corp.*, 576 A.2d 376, 381 (Pa. Super. 1990). *See also In re Nazi Era Cases,* 153 F. App'x at 825.

WEC is in dispute, and the claim that WEC is the successor-in-interest is not clearly frivolous,[46] the Court will allow Penco to engage in jurisdictional discovery on this issue. If Penco can establish that WEC is the successor-in-interest to Wholesale, Wholesale's contacts with the forum will be imputed to WEC. For the reasons outlined below, the Court finds Wholesale's contacts with the forum were sufficient to establish personal jurisdiction over it.

To establish specific jurisdiction, the court must first determine whether the defendant purposely directed activities at the forum.[47] Specifically, the defendant must "purposefully avail[] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[48] Merely entering into a contract with a resident of a forum is not always sufficient to establish personal jurisdiction over the defendant.[49] When analyzing minimum contacts in a contract case, courts consider the totality of the circumstances, including which party initiated the business relationship, the location and character of the contract negotiations, the terms of the contract, the contemplated future consequences, and the parties' actual course of dealing.[50] Given modern commercial business arrangements, physical presence in the forum by a nonresident defendant is no longer required to establish minimum contacts.[51] Therefore, mail and wire communications sent by a nonresident defendant into the forum can

---

[46] *Metcalfe*, 566 F.3d at 336.

[47] *MacKay v. Donovan,* 747 F. Supp. 2d 496, 501 (E.D. Pa. 2010) (*citing D'Jamoos*, 566 F.3d at 102).

[48] *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citing *Int'l Shoe Co.*, 326 U.S. at 319).

[49] *Mellon Bank*, 960 F.2d at 1223.

[50] *Remick v. Manfredy,* 238 F.3d 248, 256 (3d Cir. 2001); *Mellon Bank*, 960 F.2d at 1223.

[51] *See Burger King*, 471 U.S. at 476.

constitute the purposeful contacts required to establish personal jurisdiction.[52] Generally, however, despite the fact that physical entry into the forum is not required, courts in the Third Circuit often emphasize visits or some physical presence in the forum when finding specific personal jurisdiction.[53]

When examining specific jurisdiction over contract claims, courts consider whether the nonresident defendant solicited, negotiated, or executed the contract in the forum state.[54] The court also examines whether the contract contained a forum selection clause,[55] and whether the nonresident defendant knew or should have known that it was dealing with a company located in

---

[52] *Telcordia Tech Inc. v. Telkom S.A. Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006); *see also Grand Entm't Grp v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) (holding that the court had personal jurisdiction over a breach-of-contract case in which the defendants had not physically entered the forum, but had sent at least twelve telexes into the forum and initiated twenty telephone calls with the plaintiffs in the forum regarding contract negotiations); *Schiller–Pfeiffer, Inc. v. Country Home Prods.,* No. 04–1444, 2004 WL 2755585, at *6 (E.D. Pa. Dec. 1, 2004) (concluding that "substantial . . . email communications" with a corporation located in the forum may qualify as sufficient evidence of minimum contacts for the exercise of personal jurisdiction).

[53] *See, e.g., Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 147-48 (3d Cir. 1992) (finding sufficient minimum contacts to support personal jurisdiction over out-of-state defendant who placed phone calls and correspondence into forum coupled with a meeting in the forum to facilitate closing a loan); *Mesalic v. Fiberfloat Corp.,* 897 F.2d 696, 701 (3d Cir. 1990) (finding sufficient minimum contacts to support personal jurisdiction over out-of-state defendant whose contacts with forum consisted of mail and phone communications pursuant to sale of boat, delivery of boat to forum and repairs made by defendant's employees in forum on two separate occasions); *Leone v. Cataldo*, 574 F. Supp. 2d 471, 479 (E.D. Pa. 2008) (finding sufficient contacts to establish minimum contacts with Pennsylvania where considering the totality of circumstances, defendant's visit and phone calls to Pennsylvania were instrumental in the formation of the contract).

[54] *See, e.g., Remick,* 238 F.3d at 252, 256 (finding personal jurisdiction where defendant solicited plaintiff's business resulting in fee agreement, defendant sent at least one payment to Pennsylvania, plaintiff performed most services in Pennsylvania office, which defendant should have expected, and parties had repeated informational communications during course of contractual relationship); *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co.*, 75 F.3d 147, 151-52 (3d Cir. 1996) (finding no specific jurisdiction in part because it was "not a case where the defendant solicited the contract or initiated the business relationship leading up to the contract"); *Rodale Press, Inc. v. Submatic Irrigation Sys., Inc.*, 651 F. Supp. 208, 210-11 (E.D. Pa. 1986) (finding no minimum contacts where nonresident defendant entered into three-year relationship with Pennsylvania publisher because plaintiff traveled to Texas to negotiate and execute the contract, orders and payments sent to Pennsylvania were done so at plaintiff's request, and plaintiff had sole control over where it conducted its business).

[55] *See Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 65 (3d Cir. 1984) ("[A] Pennsylvania choice-of-law provision, although perhaps a factor in showing whether the defendants could foresee that their acts would have effects in Pennsylvania, would not itself be enough to vest jurisdiction.").

the forum state.[56]

Here, it is alleged that Penco and Wholesale began doing business together in 2007, after employees of both companies fortuitously met at a convention in Illinois. Wholesale negotiated the exclusive distribution contract with a high-ranking Penco employee located in Ohio. The contract, which provided that Penco would sell its products to Wholesale for resale within a defined geographic area, which did not include Pennsylvania,[57] was signed by Wholesale in Tennessee. Therefore, the Court finds no significant contacts with Pennsylvania in the solicitation or negotiation of the contract. However, it is alleged that Wholesale knew it was entering into a contract with a company which had its headquarters in Pennsylvania.

The 2007 contract expired after two years, and the parties executed a modified distribution agreement in 2009. There is no allegation or evidence suggesting that the negotiation or execution of the 2009 contract occurred in Pennsylvania.

By 2010, Wholesale owed Penco $1.4 million for products received. Penco and Wholesale representatives met at Wholesale's offices in Tennessee and Penco proposed a resolution which was unacceptable to Wholesale. The parties continued to negotiate, and eventually Penco's employee, Mr. Benenson, who lives outside Pennsylvania, agreed to the settlement agreement terms set forth in a letter sent to him from Tennessee.

Accordingly, the Court finds that none of the three contracts between Penco and Wholesale were negotiated in Pennsylvania.

---

[56] *Mellon Bank*, 960 F.2d at 1223.

[57] Wholesale was granted exclusive distribution rights for Penco products in Mississippi, Louisiana, Tennessee, Alabama, Missouri, Kansas, Arkansas, Kentucky, and parts of Illinois and Florida.

The Court turns next to contacts involved in performance of the contracts. Payment into the forum state is one indicator of purposeful availment.[58] In *Mellon Bank,* the Third Circuit found purposeful availment where the defendants were aware they were dealing with a Pennsylvania bank because they signed agreements representing that the plaintiff was a Pennsylvania entity and sent payments and correspondence to the plaintiff's Philadelphia address.[59] Here, Wholesale sent late payments due under the settlement agreement and promissory note to Penco in Pennsylvania, although on-time payments were mailed or wired to banks based in Ohio.[60]

It is also alleged that in the normal course of their business relationship from 2007 until 2011,Wholesale employees had ongoing, daily telephone and email contacts with Penco's Pennsylvania-based employees to place purchase orders, check on shipment status, confirm payments, and address customer service issues. All product orders were placed with Penco's Pennsylvania warehouse, and some of the products Wholesale received from Penco were shipped from the Pennsylvania warehouse, although most were shipped from North Carolina or Utah.

As the Third Circuit made clear in *Carteret Savings Bank*, a court can find sufficient minimum contacts to support personal jurisdiction over a nonresident defendant where the defendant makes a single visit to the forum.[61] Here, it is alleged that Wholesale's president Barry Dunham, and his son Keith Dunham, traveled to Penco's office in Pennsylvania on one occasion

---

[58] *North Penn Gas Co. v. Corning Natural Gas Corp.,* 897 F.2d 687, 690 (3d Cir. 1990).

[59] *Mellon Bank,* 960 F.2d at 1223.

[60] Dunham Decl. ¶ 69.

[61] 954 F.2d at 150.

15

in 2008 to discuss sales and marketing under the distribution agreement. Wholesale's territorial presence related to the performance of the distribution contract, while not necessary to establish personal jurisdiction, "reinforce[s] the reasonable foreseeability of suit" in Pennsylvania.[62]

The Court finds that Wholesale's contacts with the forum in connection with its business with Penco were not fortuitous or attenuated.[63] They were deliberate, frequent, ongoing, and necessary to the success of the business agreements between the parties.

Next, the Court must determine whether the litigation arose out of or is related to one or more of the activities that the defendant purposely directed at the forum.[64] The Third Circuit has not adopted a bright-line standard for approaching the relatedness requirement,[65] and indeed the Supreme Court has warned against such tests.[66] However in analyzing relatedness, the Third Circuit has articulated guiding standards. As a starting point, the Court must examine whether the claim would have arisen in the absence of Wholesale contacts (but-for causation).[67] "In contract cases, courts should inquire whether the defendants's contacts with the forum were instrumental in either the formation of the contract or its breach."[68] If it finds but-for causation, the Court must examine whether Defendant received benefits and protection from the forum such

---

[62] *See Burger King,* 471 U.S. at 476.

[63] *See Burger King,* 471 U.S. at 475.

[64] *MacKay,* 747 F. Supp. 2d at 501 (citing *D'Jamoos,* 566 F.3d at 102-03).

[65] *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 320 (3d Cir. 2007).

[66] *Int'l Shoe*, 326 U.S. at 319.

[67] *O'Connor,* 496 F.3d at 319-320, 322 (but-for causation provides a useful starting point for the relatedness inquiry).

[68] *General Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001).

that it could reasonably foresee litigation in this forum.[69]

Here, it is alleged that Wholesale breached the distributorship contract, failing to pay for $1.4 million in inventory accepted from Penco, when its sales of Penco's products fell. The parties then negotiated and entered into a settlement agreement to resolve that debt.[70] Wholesale also breached the settlement agreement, failing to remit monthly payments and failing to return certain goods to Penco. The Court finds that Wholesale's ongoing business relationship with Penco, including Wholesale's daily or frequent contact with Penco's Pennsylvania employees regarding Wholesale's purchases and sales of Penco products, and Wholesale's efforts to increase sales of Penco products, which included sending the president of Wholesale to Pennsylvania for a sales and marketing meeting, show that Wholesale benefitted from the contacts with Pennsylvania in the form of an ongoing business relationship, and, when that relationship was no longer profitable, in the formation of the March 2010 settlement agreement.

Finally, the Court must examine whether jurisdiction of the Court would comport with fair play and substantial justice. The Supreme Court identified the following factors to consider in analyzing fairness: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies."[71]

WEC argues that the burden on it to defend in this Court is significant, but provides no

---

[69] *O'Connor,* 496 F.3d at 322 ("The animating principle behind the relatedness requirement is the notion of a tacit *quid pro quo* that makes litigation in the forum reasonably foreseeable.").

[70] Defendant notes that the settlement agreement was also negotiated outside of Pennsylvania.

[71] *Burger King,* 471 U.S. at 477 (internal quotations and citations omitted).

evidence that litigating here would be burdensome, except to say that it is a new company with only $1.5 million in sales in 2012.[72] These scant factual allegations do not persuade the Court that litigating in Pennsylvania would be burdensome, in the era of modern transportation and communications.[73]

WEC also argues that Pennsylvania has marginal interest in resolving the dispute, in light of the fact that Penco may move its headquarters out of Pennsylvania in the future. The Court disagrees. Pennsylvania courts have a strong interest in providing a forum for a Pennsylvania resident which is injured, and in having the responsible defendant held accountable in Pennsylvania.[74] Penco was a resident of Pennsylvania throughout the events which led to its alleged injury, and therefore the Pennsylvania courts have an interest in adjudicating the case. Moreover, given the company's long-standing presence in Pennsylvania, Penco's preference for proceeding here is reasonable.

As neither of WEC's arguments is persuasive, and assuming for the purpose of this analysis that Wholesale's contacts with Pennsylvania can be imputed to WEC, the Court finds that the exercise of jurisdiction over this case in Pennsylvania does comport with fair play and substantial justice.[75]

---

[72] WEC also notes that it was not a party to the settlement agreement at issue and cannot be held liable as an alter ego or successor-in-interest to Wholesale, but it has not filed a motion to dismiss the case on this basis and that issue has not been briefed for the Court.

[73] *See Burger King,* 471 U.S. at 474.

[74] *Elbeco, Inc. v. Estrella de Plato, Corp.,* 989 F. Supp. 669, 678 (E.D. Pa. 1997) (quoting *Grand Entm't Grp.*, 988 F.2d 476).

[75] Moreover, the Court will not transfer venue to the Western District of Tennessee, as it would not be in the interest of justice to transfer the case in contravention of Penco's forum preference merely for WEC's increased convenience.

### C. *Jurisdictional Discovery*

The determination that the Court could exercise specific personal jurisdiction over Wholesale does not end the inquiry, because Wholesale is not a party to this litigation. Only WEC, its purported successor-in-interest, is a party. The Court cannot determine on the present record that WEC is, in fact, Wholesale's successor-in-interest. However, the Court will permit jurisdictional discovery on the issue of Wholesale's relationship to WEC, so that it may determine whether alleged predecesor-in-interest Wholesale's contacts with Pennsylvania may be properly attributed to Defendant WEC for the purpose of finding specific personal jurisdiction. The Court will allow 60 days from the date of this order for such discovery. At the end of that period, the Court will allow Defendant a period of 14 days to renew its motion to dismiss, and reassert lack of personal jurisdiction or raise any other basis for dismissal which is ripe for review.

## IV. CONCLUSION

The Court cannot, on the record before it, find that either WEC or Wholesale is subject to the general personal jurisdiction of this Court. With regard to specific personal jurisdiction, for the reasons set forth above, the Court finds sufficient evidence that Wholesale purposely directed activities at the forum. As Wholesale is now defunct and not a named defendant, the Court will allow 60 days of jurisdictional discovery regarding Wholesale's relationship to alleged successor-in-interest WEC. Accordingly, the Defendant's Motion to Dismiss is denied, but with leave to renew following the close of jurisdictional discovery. An appropriate Order follows.